Tbe opinion of tbe Court was delivered by
DuNKIN, Ch.
Tbe general authority of tbe Court to change tbe character of tbe property of infants and femes covert is not doubted; although tbe too frequent exercise of this power upon applications, necessarily ex parte, has been sometimes a subject of animadversion and of regret. Even where a testator, has given specific directions in relation to tbe *15 management of tbe property bequeathed by bim, and subsequent events have rendered tbe sóbeme impracticable or manifestly prejudicial, either from change in the condition of the property itself, or of the beneficiaries, the Court has in some instances interfered, although with extreme caution; and generally upon the assumed principle that the Court only does what the testator would have himself done iTthe new condition of things had existed when his will was made. But these are exceptional eases. Eew rights are regarded with so much jealousy as the right of testamentary disposition of one’s own property; none more dearly cherished than the privilege of securing according to a man’s own judgment, the comfort and well being of his offspring. Provided no rule of law be violated, Courts do not interfere with the exercise of this discretion, or, it may seem, caprice, on the part of testators. When juries have sometimes undertaken to set aside a will from their own views of its injustice or inexpediency, the attempt is uniformly controlled and the spirit rebuked by the sober judgment of the Court.
In this case the sole objects of the testator’s bounty as well as solicitude were his daughter (his only remaining child) and her issue. She had been the wife of the plaintiff for nine or ten years. It appeared from the evidence that the testator “ did not regard his son-in-law as a thrifty man,” that he said “ he had paid a good deal of money to get Burton out of debt but could not do it,” that he, sometime before making his will, said, that “ the portion of the property he intended to leave his daughter, Mrs Burton, should be left so that James Burton could have no control over it,” — that “he wanted his property which was to go to his daughter put in somebody’s keeping, so that Burton could not spend it.” Testator told another witness that “he dreaded James Burton’s father more than himself,” he stated his apprehension that “ they would break James up” — that “ he would leave his property so that James Burton’s father should* have no control over it,” — and *16 again that “ he would leave the property which was to go to his daughter in Jasper Yeldell’s hands.”
On 15th August, 1854, the will of testator was executed, by which he directed, the whole of his property, consisting principally of the place on which he resided, and fifteen or sixteen negroes, to be sold by his executors, upon such terms of credit as they deemed reasonable, and, after payment of his debts, directed, in substance, that his daughter “should receive and enjoy the interest and income” of the surplus for her sole and separate use during her life, and he appoints the defendants executors and trustees to take charge of the legacy for the benefit of his daughter, and see to the execution of his wishes in that behalf. Upon the death of his daughter, he directed the said trustees to make distribution among the lineal descendants of his daughter in the manner therein specified, free and discharged of all further trust.
This bill was an application to enjoin the executors from selling the property, because, in the language of the third ground of appeal, “ it would conduce greatly to the interest of the beneficiaries under the will, and particularly to the infant remaindermen, that the property should be settled specifically on Mrs Burton and her children.” It was also urged as a reason, that the executors and trustees gave no security for the fund. The defendants resisted the application for the several reasons set forth in their answer, among other reasons that they regard the arrangement, made by the testator, not only in accordance with his intentions, long and deliberately entertained, but such as, in the judgment of the defendants, is best calculated to promote the object he had in view, of affording and securing a support to his daughter and her children — they further say that they would never have qualified on the will, or accepted the trust, if they were obliged to hold the property as desired by the plaintiffs, instead of carrying out the scheme of the testator as declared by his will, and, if the prayer of the bill should be granted, they pray to *17 be relieved from tbe trust wbicb they bave unadvisedly assumed.
At tbe bearing of tbe cause mncb evidence was offered for tbe purpose of showing that a larger income would be derived, and tbe capital increased, by granting tbe prayer of tbe bill. Several witnesses testified that twenty per cent, per annum might be calculated upon as tbe natural increase of slaves. It may be remarked, in passing, that nothing can be more fallacious or illusory than any such speculative opinions. It would be very unwise to deduce any general conclusion from an isolated instance of remarkable fecundity, or peculiar exemption from disease. Tbe increase in tbe entire slave population of South Carolina from 1840 to 1850 was less than eighteen per cent, for tbe ten years, wbicb would be an average of less than two per cent, per annum. It may be said, that increase was less in consequence of emigration. But, during tbe same period, tbe increase of tbe slave population in tbe whole United States was not quite twenty-nine per cent, for tbe decade, or about three per cent, per annum. Tbe inquiry is not, however, whether a more expedient scheme might not bave been adopted by tbe testator, but whether be bad not all tbe lights before him, all tbe means for forming a correct judgment, which are now presented to tbe court. At tbe bearing of tbe cause no change whatever bad taken place either in tbe situation of tbe property or of the beneficiaries, and tbe presiding Chancellor, not deeming himself warranted in revising tbe judgment of tbe testator where bis intention was plain, dismissed tbe application.
Again — It was evidently a material part of tbe testator’s plan to secure competent trustees to carry bis purposes into effect. It is enough for tbe Court that they bad bis confidence. It is not suggested that they are in any respect less entitled to confidence than when tbe appointment was made. They assumed tbe execution of tbe trust in tbe assurance that it was to be discharged in tbe manner prescribed by tbe testator, *18 and -they pray to be relieved from tbe trust if the prayer of the bill be granted. It would be difficult, under the circumstances, to decline this request, especially as the plaintiffs oppose no objection. All the precautions of the testator would thus be defeated, and the Court, having adopted a different mode of managing the testator’s property, must seek for new trustees to carry out the scheme.
It may be a very embarrassing case to the plaintiffs, and the Court has not been insensible to the cogent reasons urged by the appellants’ counsel against the general policy of the scheme prescribed by the testator. Perhaps no member of the Court would be disposed to follow his example. But, sitting here, we have no means, if we Had the authority, to inquire into the various motives which may have influenced his determination. — It is the province of the Court to ascertain, and declare the intention of the testator, but neither to make nor unmake his will.
According to the facts disclosed by the pleadings and the evidence, this Court perceives no error in the exercise of the Chancellor’s discretion by dismissing the bill. It is ordered that the decree be affirmed.
JohNstoN, Dargan and "Wardlaw, OC,, concurred.

Decree affirmed.